EDELMIRO MARTÍNEZ RIVERA, Plaintiff and Appellee, v. SEARS ROEBUCK DE PUERTO RICO, INC., Defendant and Appellant.

No. R-66-109.        Decided February 12, 1970.

*Beverley, Rodríguez, Estrella & Pesquera* and *Roberto Bird Hoffman* for appellant. *Julio Suárez Garriga, Francisco Coll Moya,* and *Edelmiro Martínez, Jr.,* for appellee.

MR. JUSTICE TORRES RIGUAL delivered the opinion of the Court.

This is an action for damages for false imprisonment. It all began with the steps taken by appellant, Sears, Roebuck de Puerto Rico, Inc., for the recovery of a bill for certain furniture for which Janine Busto owed them. On May 11, 1961 Miss Busto authorized Sears in writing to pick up said equipment at the beauty shop which she operated in one of the apartments of a building belonging to appellee Mr. Edelmiro Martínez Rivera. Anticipating the possibility that she might not be in the premises, as in effect it happened, Miss Busto stated in writing to appellant: "If I am not in the premises, please look for Vicente at Casa Biascoechea at 1859 Loíza which is in front of the building. The correct address is: 1902 Loíza Street corner with Las Flores, Apt. 5." Defendant's Exh. B.

In accordance with this authorization, Conrado Santos, appellant's collection agent, went to take possession of the equipment. He found the premises closed and was unable to find Vicente. He then made a telephone call to Mr. Martínez Rivera requesting the latter to allow him to enter the apartment and take possession of the equipment. Martínez Rivera refused stating that Miss Busto owed him several rentals, which debt had priority. Martínez Rivera ratified his position in writing to appellant calling attention to the fact that the debt of the rentals should be liquidated before the equipment was taken outside the premises. At this point appellant filed an action for the recovery of money against Miss Busto, obtaining from the District Court a writ of attachment to secure the effectiveness of judgment about said equipment. Santos was appointed depositary. On several occasions Santos and the marshal tried to execute the attachment but they always found the premises closed and they were unable to

contact Vicente either. The steps taken in this sense being fruitless, they went with the writ to the office of Mr. Martínez Rivera and requested him to open the premises for them, showing Miss Busto's written authorization. Martínez Rivera refused alleging his preferred right to collect the rentals, that he had the duty to guarantee the possession of the premises to the lessee and that the writ of attachment was not addressed to him. The marshal and Santos informed Judge Pérez Rodríguez about the situation, and he suggested Santos to tell appellant's attorney to file an explanatory motion and to request an order addressed expressly to Mr. Martínez. Appellant's counsel, Mr. René Benítez,[1] telephoned Martínez Rivera requesting his cooperation, but the latter reiterated his denial repeating the foregoing reasons. Mr. Benítez made reference to Miss Busto's authorization and invited him to file a motion for intervention in the action for the recovery of money alleging his preferred right. In view of this conversation and of Judge Pérez Rodríguez' instructions, Mr. Benítez filed an explanatory motion and a proposed order. Judge Pérez Rodríguez entered, then, an order expressly requiring Mr. Martínez Rivera to allow appellant to enter into the premises of his property to terminate the attachment.[2] Martínez Rivera reiterated his denial to the marshal when the latter showed him the new order, telling him that if he wanted he could perform the attachment taking the door down. The marshal returned to the court and informed Judge Pérez Rodríguez of Mr. Martínez Rivera's attitude. Meanwhile, on that same day, June 20, 1961, Mr. Edelmiro Martínez, Jr., Mr. Martínez

---

[1] Actually appellant's counsel in the action for the recovery of money against Miss Busto was Mr. Carlos Ortiz, who was outside of Puerto Rico. During his absence Mr. René Benítez took care of his business.

[2] Although the terms of the order were in the sense that Mr. Martínez Rivera "allow plaintiff to enter the aforesaid premises of his property, for the purpose of executing the attachment levied in this case," Mr. Martínez Rivera clearly understood that the specific purpose of the order was to open the apartment occupied by Miss Busto. Tr. Ev. Vol. I, p. 38.

Rivera's son, filed a complaint against Miss Busto for the recovery of the rentals, obtaining on the same day a writ of attachment to secure the effectiveness of judgment, precisely, over the same equipment object of the writ of attachment whose execution, as we have seen, had been unsuccessfully sought by appellant.

After the conversation with the marshal, Judge Pérez Rodríguez made a telephone call to Mr. Martínez Rivera at his office but he was not there. He talked about the matter with the secretary, leaving Mr. Martínez Rivera a message to call him. Martínez Rivera did not answer the call. It was, then, that he entered the warrant of arrest against Martínez Rivera which gave rise to this lawsuit. Said warrant provided for the arrest and imprisonment of Mr. Martínez Rivera until the latter obeyed the order in relation with the attachment, without a previous hearing and without bail. The marshal did not imprison Mr. Martínez Rivera, but he merely notified him that he was under arrest in his own office, located in the sixth floor of the González Padín building in San Juan, agreeing to let Mr. Martínez Rivera, Jr., procure a petition for Habeas Corpus. The Superior Court, San Juan Part, set aside the warrant of arrest in the case of Habeas Corpus, No. 61-4640, *Edelmiro Martínez Rivera, petitioner,* v. *Juan A. Padilla.*

Mr. Martínez Rivera brought an action for damages for unlawful arrest, alleging that the warrant of arrest and the proceedings subsequent to the same were commenced, transacted and wilfully and maliciously procured by defendant-appellant, Sears, Roebuck de Puerto Rico, Inc. The trial court sustained the complaint concluding that:

"On the other hand, we are convinced, that Mr. Santos, defendant's agent, annoyed by plaintiff's decided and inflexible attitude, several times repeated, of not agreeing to give the apartment's key, nor opening it himself personally, departed from the principal and genuine interest of performing the

attachment, adopting the vindicative attitude of submitting plaintiff to a judicial proceeding, making statements to the Judge concerning plaintiff's conduct, clearly untrue, knowing that they were so."

In accordance with the foregoing, the court ordered appellant to pay Mr. Martínez Rivera the amount of $1,500 for damages and $300 for attorney's fees.

Feeling aggrieved by said judgment, appellant requested us to reverse it assigning the commission of eight errors which, in essence, are directed to attack the weighing as well as the insufficiency of the evidence.

We issued the writ to review.

■ The minute examination which we have made of the record[3] convinces us that the evidence introduced is insufficient to support the foregoing findings, without which the action exercised may not prosper, since one of the essential elements would be lacking, to wit, that the restraint of plaintiff's freedom shall have been the result of the acts of the defendant advising, inducing, instigating or requesting the filing of a proceeding which will cause the privation of plaintiff's freedom. See *García* v. *Galiñanes Hnos., Inc.*, 83 P.R.R. 307 (1961) and cases cited therein.

In consonance with the very testimony of Mr. Martínez Rivera, the steps taken by Sears, through its agents, Santos and Benítez, in this case consisted of: a) Santos' telephone call to Martínez Rivera asking him about the whereabouts of

[3] Plaintiff's oral evidence consisted in his own testimony, the documentary evidence consisting in the record of the petition for Habeas Corpus *Edelmiro Martínez Rivera* v. *Juan A. Padilla*, Civil No. 61-4640, copy of his complaint, order and summons against Miss Busto, about eviction, three letters from Miss Busto to plaintiff and three canceled checks. Defendant's oral evidence consisted of the testimonies of Conrado Santos, Mr. René Benítez, Judge Pérez Rodríguez, and of the marshals Juan A. Padilla and Salvador Betancourt. The documentary evidence consisted of Miss Busto's letter authorizing Sears to pick up the furniture and of the record of the case for recovery of money of Mr. Martínez Rivera against Miss Busto, Civil No. 61-3342.

Miss Busto and informing him the interest of Sears in collecting the debt, Tr. Ev. Vol. I, pp. 26 and 27; b) Santos' visit to Mr. Martínez Rivera's office on June 19, 1961, accompanying the marshal in executing the attachment, as depositary of the properties to be attached, Tr. Ev. Vol. I, p. 35; c) Mr. Benítez' telephone call to Mr. Martínez Rivera requesting his cooperation in order to be able to execute the attachment, Tr. Ev. Vol. I, p. 20; d) the motion filed by Mr. Benítez in the action for the recovery of money against Miss Busto informing the Court about the difficulties in the execution of the attachment, plaintiff's Exhibit 2.

There is nothing in this evidence to indicate that the warrant of arrest and imprisonment entered by Judge Pérez Rodríguez was in any manner instigated, executed, advised or requested by Sears or its agents. On the contrary, it clearly appears from the record that said warrant of arrest was entered by Judge Pérez Rodríguez himself in the full exercise of his discretion, without there being in the same any intervention on the part of appellant or its agents. Let us hear Judge Pérez Rodríguez himself, who is obviously the best evidence on that particular:

"MR. BEVERLEY:

Q. Witness may you tell us, indicate to the Court what was the intervention in the case which we mentioned now?

A. The depositary and the marshal, according to my best recollection, in view of the fact that the Effectiveness of Judgment for the recovery of money which the Court had ordered could not materialize, appeared before me and set forth a series of facts and on the ground of those facts, if I remember correctly, I telephoned the office of the colleague, he was not in, a secretary answered, I informed the secretary that I wanted to see if it was possible to allow, to facilitate compliance with the Order of the Court without need of further judicial proceedings and for those purposes I remember well that I told the secretary to tell the colleague to call me upon his arrival. *In the light of the facts set forth by the secretary and the marshal I deemed it proper to enter an Order against the colleague ordering him to*

*allow the marshal to comply with the Court's Order ordering his imprisonment until he allowed it.*

Q. .

A. .

Q. Witness, what information were you given concerning the refusal or the impossibility of performing the attachment to Secure Effectiveness of Judgment in the case for the Recovery of Money? What were the facts set forth by the marshal and the depositary?

MR. SUÁREZ GARRIGA:

There is objection.

A. I do not specifically remember which were they, but the impression I obtained from the result of the facts led me to conclude that the colleague was not in condition to allow the attachment *by the manner in which the marshal expressed himself that he was not going to allow or that any Court had ordered or something like that.*

Q. .

A. .

MR. BEVERLEY:

Q. Witness, what reasons did you have to issue finally the warrant of arrest?

A. *The reasons were a question of personal weighing within my function as Judge. I understood that the facts specifically and the transaction were of such a nature that they had not obtained a positive result and I considered that a more energic measure was needed to comply with the order of the Court.*

Q. *Witness, when you made the telephone call to plaintiff which was not answered by him, was the depositary present?*

A. I do not remember, but I have the impression that he was not.

Q. Witness, who prepared the warrant? The question which I want to ask you now, the Warrant of Arrest addressed against plaintiff, who prepared it?

A. *I prepared the Order in the case.*

Q. *You personally?*

A. *I entered it.*

Q. *Do you remember whether the depositary was present at that time?*

A. *He was not present; when I am in my office working I do not allow anybody in.*" Tr. Ev. Vol. III, pp. 5–9. (Italics ours.)

It also appears from the record that the arrest of Mr. Martínez Rivera was performed personally by the marshal, Santos not being present at that time. See Mr. Martínez Rivera's testimony. Tr. Ev. Vol. I, pp. 47 and 48.

The finding of the respondent court that "as his [Martínez Rivera] arrest was performed to secure the effectiveness of judgment interested by defendant, its liability for the damage caused to plaintiff is undeniable," is not correct either. In order to impose liability it does not suffice, under the circumstances of this case, that the arrest has been incidental to a judicial proceeding—execution of an attachment—but it is necessary that the restraint of liberty be the result of the acts of the defendant advising, inducing, instigating, or requesting the filing of proceedings. *García* v. *Galiñanes Hnos., Inc., supra.* As we have already seen, the evidence is clear to the effect that the warrant of arrest was entered by Judge Pérez Rodríguez in the exercise of his discretion, on the ground of his talk with the secretary of Mr. Martínez Rivera and with the marshal, without appellant or its agents having intervened in any manner in the same.

Appellee's contention in his brief memorandum in opposition to the issuance of the writ is that: a) the unlawfulness of the arrest was evident; b) that as lessor of Miss Busto, he was bound under § 1444 of the Civil Code, 31 L.P.R.A. § 4051, to maintain the lessee in the peaceful enjoyment of the lease during all the time of the contract and appellant could not oblige plaintiff to incur the violation of this provision of law and assume the subsequent responsibility towards his lessee for such reason; c) that appellant did not need appellee's help to execute the writ of attachment, since pursuant to § 178 of the Code of Civil Procedure, 32 L.P.R.A. § 819, the marshal could perform the attachment taking down the door of Miss Busto's apartment.

These arguments, plus his alleged preferred credit against Miss Busto, were, precisely, the ones which appellee alleged to the marshal in order not to obey the writ of attachment of the District Court.[4] The same are unmistakably frivolous. It suffices to indicate, insofar as his obligation with Miss Busto in his character as lessor is concerned, that the latter waived her right in writing when she authorized appellant to pick up the furniture, defendant's Exh. A, and that his action allowing the marshal to enter the apartment did not prejudice him in any manner, as, he was fully protected by the specific order of the Court. But, even more, the argument becomes vain in considering that appellee himself did not hesitate to execute an attachment of the same property to his own benefit, padlocking Miss Busto's apartment, thus preventing by all means the enjoyment and use of the same by the former.[5]

Actually, we cannot interpret appellee's action in any other manner than as an action to delay appellant's execution of the attachment for the purpose of gaining time to execute his own. This interpretation of his conduct is made stronger

[4] Except for the argument about the unlawfulness which arose with the warrant of arrest and which was duly elucidated in the petition for Habeas Corpus filed by appellee. It is not pertinent at all herein.

[5] This arises from the marshal's certification on the back of the order which reads:

"I certify that I received the instant order of attachment on June 20, 1961 complying with the same on June 20, 1961 at 3:00 o'clock in the afternoon at No. 1902 of Loíza Street, Santurce, P.R. *At plaintiff's request I proceeded to lock premises No. 5 in the second floor of said building with a padlock which plaintiff, Mr. Edelmiro Martínez Rivera, gave me. I could not notify defendant because the premises were locked.* I was unable to make an inventory because I received instructions from plaintiff that upon notifying defendant to ask the Court for an order to make an inventory of the property which is in the premises. I also certify that I left attached to the front door copy of the order duly served. And I gave the padlock key to the depositary.
San Juan, Puerto Rico, June 20, 1961.

Jesús Cortés
General Marshal"

(Italics ours.)

by appellee's unsuccessful claim before the marshal and before appellant's counsel, that as lessor he had a preferred credit against Miss Busto. Appellee's credit and that of appellant have the same preference. Section 1822, *supra*,[6] for which reason his only right was limited to prorate the value of the furniture, pursuant to the provisions of § 1826 of the Civil Code, 31 L.P.R.A. § 5211.[7]

But, although appellee would have been convinced that the law favored him in this particular, it was his duty to take his contention before the District Court's consideration, through a third-party action, pursuant to the procedure established in the Act of May 14, 1907, 32 L.P.R.A. §§ 1171 to 1190, or requesting to intervene in the action for the recovery of money, for which appellant's counsel invited him. He also could have taken to the attention of Judge Pérez Rodríguez his opposition answering the telephone call.

We cannot give our approval to appellee's claim that the marshal could perform the attachment taking down the door.

---

[6] Section 1822 insofar as pertinent provides:

"With regard to specified personal property of the debtor, the following are preferred:

"(1) Credits for the construction, repair, preservation, or for the amount of the sale of personal property which may be in the possession of the debtor to the extent of the value of the same.

"      .      .      .      .      .      .      .      .

"(7) Credits for rents and leases for one year with regard to the personal property of the lessee existing on the estate leased and on the fruits thereof."

[7] Section 1826 of the Civil Code insofar as pertinent provides:

"Credits which enjoy preference with regard to certain personal property exclude all the others to the extent of the value of the personal property to which the preference refers.

"When two or more creditors claim preference with regard to certain personal property, the following rules shall be observed as to priority of payment:

"      .      .      .      .      .      .      .      .

"(4) In all other cases the value of the personal property shall be distributed pro rata among the credits which enjoy special preference with regard to the same property."

Violence is never favored in judicial proceedings and its use is limited to cases truly extraordinary. It is thus recognized in § 178 of the Code of Civil Procedure, *supra*, on which appellee relies his claim. Said section wisely provides that before appealing to force, the marshal will publicly demand the delivery of the property.[8] This was what the marshal did, to ask Mr. Martínez Rivera to allow the attachment by opening the apartment in order to avoid taking down the door.

■ Really, appellee's attitude in all this matter does not appeal either to reason or to sympathy. We are aware of the fact that appellee is an attorney of vast experience in this forum. His mission as such is not limited merely to represent private interests—in this case his own—but to be a loyal and efficient instrument in the administration of justice and order in our society. As ministers of justice, lawyers are the ones called upon to aid it—*abogado* (advocate, lawyer) comes from *advocatus* which precisely signifies one called on according to Escriche in his I *Diccionario Razonado de Legislación y Jurisprudencia* 60, "because among the Romans in business which called for knowledge in the law, each one called in his aid those who made a particular study of the law"—offering their cooperation to the courts and to judicial officers for due compliance with judicial orders. When they deem that the orders of a court are wrong or unduly prejudice their own rights or the rights of those represented they should resort to the court to set forth their contentions with respect and deference and not disregard them or hinder them with more or less legalistic arguments.

The judgment appealed from will be reversed and the complaint will be dismissed imposing on plaintiff-appellee the .

---

[8] Section 178 insofar as pertinent provides:

"If the property, or any part thereof, be concealed in a building or enclosure, the marshal must publicly demand its delivery. If it be not delivered, he must cause the building or enclosure to be broken open, and take the property into his possession; and, if necessary, he may call to his aid the power of his district."

640

payment of $500 for attorney's fees, plus costs including those of the instant petition for review.

Mr. Chief Justice and Mr. Justice Blanco Lugo did not participate herein.

